[No. B114341. Second Dist., Div. Six. May 24, 1999.]

NORMA E. PRUITT, Plaintiff and Appellant, v.
GENERAL MOTORS CORPORATION, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*This opinion is certified for publication with the exception of part II.

## COUNSEL

Law Offices of Kevin M. Fillo, Kevin M. Fillo; Wolf, Seider, Abrams & Wolf, Marcus M. Kaufman, Ellen K. Wolf and John H. Wolf for Plaintiff and Appellant.

McCutchen, Doyle, Brown & Enersen, David M. Heilbron, Leslie G. Landau, Robert A. Brundage; Grace, Genson, Cosgrove & Schirm, Derek S. Whitefield; Bowman & Brooke and Vincent Galvin for Defendant and Respondent.

Harvey M. Grossman and Hugh F. Young, Jr., for the Product Liability Advisory Council, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**GILBERT, Acting P. J.**—An automobile air bag deploys in a low-impact collision injuring plaintiff driver. In her jury trial against defendant respondent General Motors Corporation (GMC), appellant and plaintiff, Norma E. Pruitt introduced evidence of a design defect in the air bag of her car. The trial court instructed the jury on theories of risk-benefit and failure to warn. It refused an instruction on the consumer expectations test. The trial court also excluded evidence of postmanufacture warnings. The jury rendered judgment for GMC. We affirm.

### FACTS

On March 22, 1995, Pruitt was driving her 1991 Chevrolet Beretta manufactured by GMC. The seat belt and shoulder harness were buckled. She turned left at an intersection and collided with an oncoming car. The driver's side air bag deployed within an instant of impact.

Pruitt suffered three fractures of her lower mandible which required surgery. She sustained medical expenses of $66,224.

In her product liability cause of action against GMC, Pruitt alleged that the air bag deployed in a low-speed collision causing her injuries.

At trial, the court granted Pruitt's motion to exclude expert testimony offered by GMC regarding the expectations of an ordinary consumer and granted GMC's motion to preclude Pruitt's testimony about her expectations concerning the safety of the air bag. Nevertheless, at trial Pruitt testified that she did not expect the air bag to injure her.

The evidence was in conflict as to whether Pruitt would have suffered injury but for the deployment of the air bag. Pruitt was 75 years old when the accident occurred. She had lost her teeth when she was 38, which caused extreme bone atrophy. Her doctors found that she had an extremely weak jaw. It was thus very fragile and susceptible to injury.

The trial court instructed the jury on products liability. (BAJI No. 9.00.)[1] It instructed on the elements of failure to warn. (BAJI No. 9.00.7.) It also

---

[1]"The plaintiff Pruitt seeks to recover damages based upon a claim of a defective product. [¶] A product may be defective because of a defect in design or a failure to adequately warn the consumer of a hazard involved in the foreseeable use of the product."

instructed on design defect. (BAJI No. 9.00.5.)[2] To question No. 1 of the special verdict form, "Was there a defect in design or a failure to warn defect in the 1991 Chevrolet Beretta?", the jury answered, "No."

DISCUSSION

I

Pruitt contends the jury should have been instructed on the consumer expectations test.

Pruitt requested and the trial court refused to instruct the jury that, "A product is defective in design: if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." (BAJI No. 9.00.5; see *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 429 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].)

Our Supreme Court discussed the application of the consumer expectation test in *Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 567 [34 Cal.Rptr.2d 607, 882 P.2d 298]: "[T]he consumer expectations test is reserved for cases in which the *everyday experience* of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions, and is thus defective *regardless of expert opinion about the merits of the design*. It follows that where the minimum safety of a product is within the common knowledge of lay jurors, expert witnesses may not be used to demonstrate what an ordinary consumer would or should expect. Use of expert testimony for that purpose would invade the jury's function (see Evid. Code, § 801, subd. (a)), and would invite circumvention of the rule that the risks and benefits of a challenged design must be carefully balanced whenever the issue of design defect goes beyond the common experience of the product's users. [Fn. omitted.]" (Italics added.)

The deployment of an air bag is, quite fortunately, not part of the "everyday experience" of the consuming public. Minimum safety standards for air bags are not within the common knowledge of lay jurors. Jurors are in need of expert testimony to evaluate the risks and benefits of the challenged design. Even Pruitt's own expert testified that in designing air bags there are

---

[2]BAJI No. 9.00.5 states in part: "A product is defective in design: [¶] if there is a risk of danger inherent in the design which outweighs the benefits of that design. [¶] In determining whether the benefits of the design outweigh such risks you may consider, among other things, the gravity of the danger posed by the design, the likelihood that such danger would cause damage, the mechanical feasibility of a safer alternate design at the time of manufacture, the financial cost of an improved design, and the adverse consequences to the product and the consumer that would result from an alternate design."

tradeoffs involving complex technical issues. The trial court correctly refused to give the consumer expectations instruction.

In footnote 3 of *Soule v. General Motors Corp., supra,* 8 Cal.4th 548, 566-567, the court gave examples of when the consumer expectations test was appropriate: automobiles that explode while idling at a stoplight or roll over and catch fire in a two-mile-per-hour collision. To this we might add air bags inflating for no apparent reason while one is cruising down the road at 65 miles per hour.

Professors James A. Henderson, Jr., and Aaron D. Twerski, commentators who served as reporters of the Restatement Third of Torts, opine that ". . . California clearly limited the consumer expectations test to res ipsa-like cases that do not require the application of a general standard to determine defective design. For all the rest—what are here referred to as classic design cases—risk-utility balancing is mandated." (*Achieving Consensus on Defective Product Design* (1998) 83 Cornell L.Rev. 867, 899-900.)

Messieurs Henderson and Twerski state that in res ipsa-like cases, "liability attaches without the necessity of identifying the type of defect that triggered the harm. It makes no difference if the product failed due to a manufacturing or a design defect. [Fn. omitted.]" (*The Politics of the Products Liability Restatement* (1998) 26 Hofstra L.Rev. 667, 677.)

Pruitt's reliance on *Bresnahan v. Chrysler Corp.* (1995) 32 Cal.App.4th 1559 [38 Cal.Rptr.2d 446] is misplaced. There plaintiff was injured in a low-speed collision. Her air bag deployed, forcing her left elbow into the windshield's side pillar. She blamed the design of the air bag and windshield for her fractured elbow.

After plaintiff's opening statement the trial court granted nonsuit on the ground that she failed to state a prima facie case. The Court of Appeal reversed the judgment of nonsuit concluding that she had stated a prima facie case under the risk-benefit test. The court also concluded that "[o]n the record presented" the trial court erred in precluding plaintiff from proceeding under the consumer expectations test. (*Bresnahan v. Chrysler Corp., supra,* 32 Cal.App.4th at p. 1569.)

Subsequently, Chrysler appealed the verdict in favor of plaintiff in the same case. (*Bresnahan v. Chrysler Corp.* (1998) 65 Cal.App.4th 1149 [76 Cal.Rptr.2d 804].) The Court of Appeal stated the verdict could be upheld on the theory of failure to warn. Thus the Court of Appeal was not required to decide on the appropriateness of the consumer expectations test. Nevertheless, the court stated that it saw nothing in the record to cause the trial court to depart from the first *Bresnahan* opinion. (*Id.,* at p. 1155.)

The discussion of the consumer expectations test in both *Bresnahan* opinions is clearly dicta. It also conflicts with our Supreme Court's discussion of the applicability of the test in *Soule*. We decline to follow the *Bresnahan* opinions.

II*

. . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. Costs are awarded to respondent.

Yegan, J., and Coffee, J., concurred.

---

*See footnote, *ante*, page 1480.