[No. B151816. Second Dist., Div. Seven. Aug. 5, 2002.]

LUCILLE McCABE, Plaintiff and Appellant, v.
AMERICAN HONDA MOTOR CO., INC., et al., Defendants and
Respondents.

**COUNSEL**

The Legal Group and Alan M. Goldberg for Plaintiff and Appellant.

Feeney Kellett Wienner & Bush, Derek S. Whitefield and Alex W. Craigie for Defendants and Respondents.

## OPINION

**PERLUSS, J.**—Plaintiff Lucille McCabe appeals from a judgment entered in a products liability action after the trial court granted summary judgment for defendants American Honda Motor Company, Incorporated, and Saturn of the Valley, Incorporated (Saturn). McCabe was injured when the driver's side air bag in her Honda Civic failed to deploy in a frontal collision with another car. McCabe sued Honda, the air bag's manufacturer, and Saturn, the reseller, alleging the air bag was defective in both its manufacture and its design.[1] The trial court granted Honda's[2] motion for summary judgment, reasoning the expert declaration from a Honda engineer established that the air bag was not intended to inflate under the circumstances of the crash and that McCabe's testimony that she "expected" the air bag to deploy was insufficient, without expert testimony, to raise a triable issue of material fact as to product defect.

On appeal, McCabe contends she raised triable issues of fact as to design defect under the "consumer expectation theory" and maintains the court erred in holding the consumer expectation test inapplicable as a matter of law. We agree McCabe raised triable issues of fact as to whether a driver's side air bag, in the disputed factual context of the frontal collision at issue in this case, is the kind of product about which consumers can form minimum safety assumptions. Consequently, it was error for the trial court to conclude, as a matter of law, that the consumer expectation test was inapplicable.

Summary judgment was also improper because Honda failed to provide any evidence negating the alternative, risk-benefit theory of design defect available to McCabe. Under that alternative test, a product that causes injury may be defective in design notwithstanding its satisfaction of consumer expectations if the design contains an "excessive danger" that outweighs its relative merit.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 1999, while traveling westbound in her Civic, McCabe came to a full stop in the left turn lane of a controlled intersection and waited

---

[1]McCabe also sued Corine Louise Madrid, the driver of the other vehicle. Madrid was not a party to the summary judgment motion and is not a party to this appeal.

[2]Saturn filed a notice of joinder in Honda's summary judgment motion.

for a break in oncoming traffic to make a left turn. According to McCabe, as the light turned yellow and she prepared to make her left turn, a Cadillac traveling eastbound at a "high speed" collided "head on" with her Civic. Although the Civic was equipped with a driver's side air bag, the air bag did not deploy in the crash. McCabe, who suffered damage to her face and teeth in the accident when her head slammed against the steering wheel, sued Honda and Saturn, alleging the Civic's air bag was defective in its design and/or manufacture.

### A. *Honda's Motion for Summary Judgment*

Honda moved for summary judgment, arguing that the air bag performed in accordance with its intended design. Honda included with its motion the 1995 owner's manual for the Civic, advising the consumer that the air bag system is designed to inflate only "in a severe frontal collision" comparable to "a crash into a parked car at 25 [miles per hour]," and will not inflate "in a moderate frontal collision, or during a rear impact, side impact, or a roll-over even if the impact is severe." The owner's manual also included an illustration depicting the "frontal collision range" to span from the outside corner of one front headlight to the outside corner of the other.

Honda also included the expert declaration of Mary Christopherson, a Honda staff engineer involved in the design and testing of automotive air bags. Christopherson explained that determining whether an air bag should have deployed after a given collision required "an analysis of the angle of impact and the longitudinal deceleration experienced by the vehicle in the collision as compared with the severity of a 12 [miles per hour] full frontal impact." According to Christopherson, the air bag is designed to deploy "when the crash sensors predict in the first moments of a collision that the deceleration of the vehicle along its longitudinal axis will be more severe than a full frontal barrier impact at or above 12 [miles per hour]," and is designed not to deploy if the "longitudinal deceleration of the vehicle is less severe than a full frontal barrier impact below 8 [miles per hour]." In addition, the " 'frontal collision range' for deployment is defined as an impact with a principal direction of force that is within 30 degrees of the centerline of the vehicle. Air bags are not intended to deploy in impacts in which the principle [*sic*] force vector is outside the 30 degree range, unless the crash severity is so severe that the longitudinal deceleration of the vehicle exceeds the severity of a 12 [miles per hour] full frontal barrier impact."

Christopherson reconstructed the accident based on the "physical damage to the vehicles as depicted in the photographs," and concluded the "left front

corner of the Civic made initial contact with the left front wheel area of the Cadillac" at a 35-degree frontal collision range, outside the "30 degree frontal collision range" required for the air bag to deploy. She determined the longitudinal component of the crash was approximately four miles per hour, "very clearly less severe" than a 12-mile-per-hour "full frontal barrier impact" in which the air bag is designed to deploy. Based on the foregoing, Christopherson opined that the air bag system performed as designed, and there was "no evidence of a defect."

### B. *McCabe's Opposition*

In opposition to the summary judgment motion, McCabe maintained the Cadillac collided with her Civic "head on." McCabe included photographs of the Civic showing extensive damage to the left front hood area and to the left side of the car and claimed the collision occurred within the frontal collision range identified in the owner's manual. McCabe also included witness testimony, including her own and that of the Cadillac's driver, that the Cadillac was traveling at a speed at or in excess of 35 miles per hour when it collided with her Civic. McCabe testified she purposely purchased a car with an air bag for safety reasons and expected the air bag would deploy in a high-speed head-on collision like the one in this case.

### C. *Honda's Reply and the Trial Court's Ruling*

In reply, Honda observed that McCabe offered no expert testimony refuting Christopherson's expert opinion that the air bag performed in accordance with its intended design. Honda argued that the consumer expectation test set forth in *Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1] (*Barker*), permitting a plaintiff to prove a design defect with circumstantial evidence that the product performed below the safety standard an ordinary consumer would expect, did not apply to the deployment of an air bag, which, it maintained, involved sophisticated technology and was outside the ordinary experience of the consumer.

The trial court granted summary judgment for Honda, reasoning that, by omitting from her opposition any expert testimony contravening Christopherson's declaration, McCabe had failed to produce evidence sufficient to raise a triable issue of fact as to whether the air bag should have deployed under the circumstances of this accident. The court concluded, without explanation, that the consumer expectation test, permitting a plaintiff to establish a design defect without resort to expert testimony, was inapplicable to the circumstances of this case.

McCabe filed a timely notice of appeal.

CONTENTION

McCabe contends (1) the trial court erred in concluding the consumer expectation test for defective design was inapplicable under the facts of this case; and (2) under the consumer expectation test, she raised triable issues of fact as to whether the air bag's design was defective.

DISCUSSION

### 1. *Standard of Review.*

■ Summary judgment is proper where the evidence shows there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) To satisfy this burden, a defendant moving for summary judgment must establish that one or more of the elements of a cause of action cannot be established or that a complete defense exists to the cause of action. (Code Civ. Proc., § 437c, subd. (*o*).) If the defendant meets this burden, the burden shifts to the plaintiff to show a triable issue of material fact exists as to either the particular cause of action or the proffered defense thereto. (*Ibid.*) The plaintiff may not rely on mere allegations or denials of the pleadings but instead must set forth specific facts demonstrating a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (*o*); *Aguilar,* at p. 843.)

■ We review the trial court's grant of summary judgment de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) The evidence presented by the moving party is strictly construed while that of the opposing party liberally construed to include any inferences reasonably deducible from the evidence. (*Savage v. Pacific Gas & Electric Co.* (1993) 21 Cal.App.4th 434, 440 [26 Cal.Rptr.2d 305].) We do not engage in a credibility determination or a weighing of the evidence; instead, all doubts or evidentiary conflicts are to be resolved against the moving party. (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 840 [89 Cal.Rptr.2d 540].) We affirm summary judgment only where the papers and pleadings show there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

### 2. *Product Defect—Manufacturing Defect and Design Defect.*

■ California recognizes two distinct categories of product defects: manufacturing defects and design defects. (*Barker, supra,* 20 Cal.3d at pp.

429-430.) A manufacturing defect exists when an item is produced in a substandard condition. (*Barker*, at p. 429; see, e.g., *Lewis v. American Hoist & Derrick Co.* (1971) 20 Cal.App.3d 570, 580 [97 Cal.Rptr. 798] [manufacturer's failure to comply with its own design specifications regarding assembly of crane showed manufacturing defect].) Such a defect is often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line. (*Barker,* at p. 429.)

A design defect, in contrast, exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective. (*Barker, supra,* 20 Cal.3d at p. 429.) ■ In *Barker,* the Supreme Court recognized two tests for proving design defect. The "consumer expectation test" permits a plaintiff to prove design defect by demonstrating that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." (*Id.* at pp. 426-427, italics omitted.) ■ This test, rooted in theories of warranty, recognizes that implicit in a product's presence on the market is a representation that it is fit to do safely the job for which it was intended. (*Barker,* at p. 430; see also *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 566 [34 Cal.Rptr.2d 607, 882 P.2d 298] (*Soule*) ["ordinary users or consumers of a product may have reasonable, widely accepted minimum expectations about the circumstances under which it should perform safely. Consumers govern their own conduct by these expectations, and products on the market should conform to them"].) If the facts permit an inference that the product at issue is one about which consumers may form minimum safety assumptions in the context of a particular accident, then it is enough for a plaintiff, proceeding under the consumer expectation test, to show the circumstances of the accident and "the objective features of the product which are relevant to an evaluation of its safety" (*Soule,* at p. 564), leaving it to the fact finder to "employ '[its] own sense of whether the product meets ordinary expectations as to its safety under the circumstances presented by the evidence.' " (*Soule, supra,* 8 Cal.4th at p. 563; *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 126 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].) Expert testimony as to what consumers ordinarily "expect" is generally improper. (*Soule,* at p. 567 [expert testimony as to what laypersons may expect from product improperly invades province of jury].)[3]

■ The second test for design defect is known as the "risk-benefit test." Under this test, products that meet ordinary consumer expectations

---

[3]An exception exists where the product is in specialized use with a limited group of consumers. In such cases, "if the expectations of the product's limited group of ordinary consumers are beyond the lay experience common to all jurors, expert testimony on the limited subject of what the product's actual consumers *do expect* may be proper." (*Soule, supra,* 8 Cal.4th at p. 568, fn. 4.)

nevertheless may be defective if the design embodies an " 'excessive preventable danger.' " (*Barker, supra,* 20 Cal.3d at p. 430; *Soule, supra,* 8 Cal.4th at p. 567.) ■ To prove a defect under this test, a plaintiff need only demonstrate that the design proximately caused the injuries. Once proximate cause is demonstrated, the burden shifts to the defendant to establish that the benefits of the challenged design, when balanced against such factors as the feasibility and cost of alternative designs, outweigh its inherent risk of harm. (*Barker,* at p. 431; *Soule,* at p. 562.)

■ The two tests provide alternative means for a plaintiff to prove design defect and do not serve as defenses to one another. A product may be defective under the consumer expectation test even if the benefits of the design outweigh the risks. (*Curtis v. State of California ex rel. Dept. of Transportation* (1982) 128 Cal.App.3d 668, 690-691 [180 Cal.Rptr. 843, 43 A.L.R.4th 823].) On the other hand, a product may be defective if it satisfies consumer expectations but contains an excessively preventable danger in that the risks of the design outweigh its benefits. (*Barker, supra,* 20 Cal.3d at p. 430.)

■ Whether a plaintiff may proceed under the consumer expectation test or whether design defect must be assessed solely under the risk-benefit test is dependent upon the particular facts in each case. (*Soule, supra,* 8 Cal.4th at p. 566.) Because " ' "[i]n many situations . . . the consumer . . . would have *no idea* how safe the product could be made," ' " the consumer expectation test is "reserved for cases in which the *everyday experience* of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions and is thus defective *regardless of expert opinion about the merits of the design.*" (*Id.* at pp. 562, 567, some italics omitted.) For example, "the ordinary consumers of modern automobiles may and do expect that such vehicles will be designed so as not to explode while idling at stoplights, experience sudden steering or brake failure as they leave the dealership, or roll over and catch fire in two-mile-per-hour collisions." (*Id.* at p. 566, fn. 3;[4] see also *Campbell v. General Motors Corp., supra,* 32 Cal.3d 112, 126 [passenger on bus injured during sharp turn could use consumer expectation test to prove absence of "grab bar" was design defect; public transport is matter of common experience and required no expert testimony]; *Sparks v. Owens-Illinois, Inc.* (1995) 32 Cal.App.4th 461, 474-475 [38 Cal.Rptr.2d 739] [insulation containing asbestos and causing fatal

---

[4]This footnote has been the subject of extensive debate among commentators. Some have suggested that in including this footnote the Supreme Court effectively limited the consumer expectation test to fact situations lending themselves to a res ipsa loquitur-type analysis. (See Henderson & Twerski, *Achieving Consensus on Defective Product Design* (1998) 83 Cornell L.Rev. 867, 899-900.)

disease was a product within ordinary experience and understanding of consumer]; *Arnold v. Dow Chemical Co.* (2001) 91 Cal.App.4th 698, 726 [110 Cal.Rptr.2d 722] [home pesticides causing disability was product within common knowledge of consumer, and, therefore, defect could be assessed under consumer expectation theory].)

Some products "cause injury in a way that does not engage its ordinary consumers' reasonable minimum assumptions about safe performance. For example, the ordinary consumer of an automobile simply has 'no idea' how it should perform in all foreseeable situations, or how safe it should be made against all foreseeable hazards." (*Soule, supra*, 8 Cal.4th at pp. 566-567.) In those cases, where the plaintiff's theory of defect seeks to examine the behavior of "obscure components under complex circumstances" outside the ordinary experience of the consumer, the consumer expectation test is inapplicable; and defect may only be proved by resort to the risk-benefit analysis. (*Id.* at p. 570 [where automobile collision resulted in left front wheel breaking free, collapsing rearward and smashing floorboard into driver's feet, it was error to instruct jury with consumer expectation test; proper test for defect is risk-benefit because behavior of obscure component parts during complex circumstances of accident not within ordinary experience of consumer]; *Morson v. Superior Court* (2001) 90 Cal.App.4th 775, 793-795 [109 Cal.Rptr.2d 343] [consumer expectation test inapplicable to assess defect in latex glove where chemical in the rubber caused allergic reactions in those sensitive to latex; the allergenicity of the rubber is " 'a matter beyond the common experience and understanding' " of the product's consumers].)

Whether a product is within the everyday experience of ordinary consumers and thus susceptible to a consumer expectation analysis cannot be determined by looking at the product in isolation, but rather must be considered in the context of the facts surrounding its failure. The critical question is whether the "*circumstances of the product's failure* permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers." (*Soule, supra,* 8 Cal.4th at pp. 568-569, italics added.)[5]

---

[5]The inherent complexity of the product itself is not controlling. For example, a complex product may perform "so unsafely" in a particular circumstance "that the defect is apparent to the common reason, experience, and understanding of its ordinary consumers." (*Soule, supra,* 8 Cal.4th at p. 569; see *Akers v. Kelley Co.* (1985) 173 Cal.App.3d 633, 651 [219 Cal.Rptr. 513] ["There are certain kinds of accidents—even where fairly complex machinery is involved—which are so bizarre that the average juror, upon hearing the particulars, might reasonably think: 'Whatever the user may have expected from that contraption, it certainly

### 3. *The Trial Court Erred in Granting Summary Judgment Because Honda Failed to Demonstrate the Air Bag Was Not Defectively Designed as a Matter of Law.*

Honda incorrectly maintains it met its burden of negating product defect on summary judgment by showing, through unrefuted expert testimony, that the product performed in accordance with its intended design. McCabe's complaint alleged a defect in both the manufacture and design of the air bag. Even if Honda's expert declaration could be viewed as having demonstrated, as a matter of law, that the air bag performed under the circumstances of the crash in conformity with its design (a questionable conclusion considering the underlying factual dispute about the circumstances of the accident), such evidence alone is not sufficient to negate McCabe's theory that the design itself was defective under either the consumer expectation or risk-benefit theory.

#### a. *The Trial Court Erred in Holding the Consumer Expectation Test Inapplicable as a Matter of Law.*

Relying on *Pruitt v. General Motors Corp.* (1999) 72 Cal.App.4th 1480, 1483 [86 Cal.Rptr.2d 4], Honda insists the consumer expectation test does not apply to product defect cases involving automobile air bags. In *Pruitt,* the plaintiff sued an automobile manufacturer for injuries sustained after the air bag deployed in a frontal collision with an oncoming car. The trial court refused to instruct the jury under the consumer expectation test. Division Six of our court affirmed, holding "[t]he deployment of an air bag is, quite fortunately, not part of the 'everyday experience' of the consuming public. Minimum safety standards for air bags are not within the common knowledge of lay jurors . . . [who] are in need of expert testimony to evaluate the risks and benefits of the challenged design." (*Ibid.*)

McCabe, in contrast, relying on *Bresnahan v. Chrysler Corp.* (1995) 32 Cal.App.4th 1559 [38 Cal.Rptr.2d 446], argues air bags are the kind of product about which consumers can reasonably form minimum safety assumptions. In *Bresnahan,* the plaintiff sued an automobile manufacturer for injuries sustained when her driver's side air bag deployed in a low-speed, rear-end collision, forcing her elbow to crash against the windshield's side pillar. The plaintiff sought to prove the air bag, in conjunction with the placement of the windshield, was defectively designed because the product failed to perform as safely as an ordinary consumer would expect under the circumstances. At trial, the court refused to allow plaintiff to proceed under a consumer expectation theory. Division Two of our court reversed, holding that "an ordinary consumer is . . . equipped to form expectations of the

wasn't that' "], disapproved on another ground in *People v. Nesler* (1997) 16 Cal.4th 561, 582 [66 Cal.Rptr.2d 454, 941 P.2d 87].)

safety of a car with an air bag in a minor rear-end collision" and that, on the record presented, the plaintiff should have been permitted to proceed under the consumer expectation theory. (*Id.* at p. 1568.)

Citing the different conclusions in *Bresnahan* and *Pruitt*, both parties assert that a conflict exists and urge us to adopt the reasoning of the case more favorable to her or its respective position. In our view, the parties have incorrectly framed the issue. *Bresnahan* and *Pruitt* involved deployment of air bags under factually different scenarios. The case at bar involves the *nondeployment* of an air bag under yet another factual scenario. Deciding whether the functioning of an automobile air bag lends itself, in every circumstance, to the consumer expectation test would improperly focus on the nature of the product without regard to the circumstances of its purported failure. For example, it may be that an "[a]ir bag[] [that] inflat[es] for no apparent reason while one is cruising down the road at 65 miles per hour" is the kind of product failure about which consumers may form minimum safety expectations without expert opinion as to the relative merit of the design, while an air bag that deploys in a low-speed frontal collision may not be. (See, e.g., *Pruitt v. General Motors Corp., supra,* 72 Cal.App.4th at p. 1484 [citing as illustration of when consumer expectation test would be applicable].) ▮ The critical question, in assessing the applicability of the consumer expectation test, is not whether the product, when considered in isolation, is beyond the ordinary knowledge of the consumer, but whether the product, *in the context of the facts and circumstances of its failure*, is one about which the ordinary consumers can form minimum safety expectations. (*Soule, supra,* 8 Cal.4th at pp. 568-569.) If the facts permit such an inference, it is error to conclude the consumer expectation test is inapplicable as a matter of law. (See *id.* at p. 568.)

In this case, drawing all inferences and resolving all conflicts in favor of the nonmoving party, we find summary judgment was improperly granted because numerous triable issues of material fact exist as to the circumstances of the accident. Relying on its expert's "reproduction" of the accident, Honda maintains the accident occurred at a speed and at a collision range outside that required for the air bag to deploy. McCabe, on the other hand, provided evidence that the accident was a "head-on" collision, occurring *within* the "frontal collision range" depicted in Honda's owner's manual. McCabe also provided testimony that the Cadillac was traveling at a speed in excess of 25 miles per hour when it hit her Civic, the speed identified in the owner's manual as the minimum necessary for the air bag to deploy. Moreover, although Honda based its reproduction of the accident on pictures of the automobiles after the collision, Honda's own owner's manual points out that "[j]ust from viewing the vehicle damage after a crash, it is very

difficult to accurately determine if the air bags should or should not have inflated." Thus, there is conflicting evidence as to the circumstances of the accident and whether the air bag performed in accordance with the representations made in the owner's manual.

■■■ McCabe provided sufficient evidence for a jury to infer that the nondeployment of an air bag, in the context of the high-speed, "head-on" collision described by McCabe, violates minimum safety expectations of the ordinary consumer. Indeed, the consumer expectation theory, rooted as it is in a warranty heritage (see *Barker, supra,* 20 Cal.3d at p. 430), would seem necessarily to encompass a case in which it is alleged the product failed to perform in accordance with the representations contained in its own owner's manual.[6] At a minimum, triable issues of fact as to the circumstances of the accident preclude a determination that the consumer expectation test of design defect is inapplicable as a matter of law.

In reversing summary judgment, we do not hold either that the consumer expectation test applies as a matter of law or that the test was satisfied in this case. In putting forth its own version of the accident, the defense will be free to argue to the fact finder that the consumer expectation test is not applicable in this case because the performance of the air bag *in this type of collision* is not the type of product performance about which consumers may have reasonable minimum safety expectations. (See *Bresnahan v. Chrysler Corp.* (1998) 65 Cal.App.4th 1149, 1155 [76 Cal.Rptr.2d 804] [on remand to trial court after court of appeal held sufficient evidence for applicability of consumer expectation test to be decided by jury, defendant argued to jury that consumer expectation test was inapplicable under complex fact situation of case; argument provided the jury with an "informed basis" to decide whether consumer expectation test applied].) ■■■ We hold simply that, based on the evidence presented, and resolving all factual inferences in favor of the nonmoving party, there is sufficient evidence from which a jury could infer that the failure of an air bag to deploy under the facts and circumstances advanced by McCabe violates commonly held minimum safety assumptions within the every day experience of ordinary consumers.[7] For this reason, summary judgment was improper.

---

[6]Honda insists the owner's manual is not evidence of "consumer expectation" because McCabe admits she did not rely on it in forming her expectation of the air bag's performance in frontal collisions. Whether McCabe actually relied on the owner's manual in forming her expectation is irrelevant. The consumer expectation test considers the "expectations of a hypothetical reasonable consumer, rather than those of the particular plaintiff in the case." (*Campbell v. General Motors Corp., supra,* 32 Cal.3d at p. 126, fn. 6.)

[7]In a jury case, the trial court must initially determine, as a question of foundation and in the context of the facts and circumstances of the particular case, whether the product is one

b. *Honda Failed to Negate Design Defect Under the Alternative Risk-benefit Test.*

 Honda's summary judgment motion fails for another reason. A claim of design defect may be proved under the consumer expectation theory (if applicable) or the risk benefit theory. The tests are not mutually exclusive, and a plaintiff may proceed under either or both. (*Barker, supra,* 20 Cal.3d at p. 435; see also BAJI No. 9.00.5 [designating the consumer expectation and risk-benefit as alternative tests and providing an instruction to accommodate either or both].)[8] Under the risk-benefit theory, McCabe need only show the design caused her injuries; if so, the burden shifts to the defendant to prove the benefits of the design outweigh its inherent risks. (See *Bresnahan v. Chrysler Corp., supra,* 32 Cal.App.4th at p. 1565.) McCabe provided evidence of causation when she testified the failure of the air bag to deploy forced her head to crash into the steering wheel, resulting in facial and dental injuries. Honda did not dispute McCabe's evidence of causation, nor did it provide any evidence as to the relative risks-benefits of the air bag's design.

Honda argues it was not required to negate the risk-benefit theory because McCabe elected not to proceed under that theory. Honda points to discovery

---

about which the ordinary consumer can form reasonable minimum safety expectations. (*Soule, supra,* 8 Cal.4th at pp. 568-569.) If the court concludes it is not, no consumer expectation instruction should be given. (See *Pruitt v. General Motors Corp., supra,* 72 Cal.App.4th at pp. 1483-1484.) If, on the other hand, the trial court finds there is sufficient evidence to support a finding that the ordinary consumer can form reasonable minimum safety expectations, the court should instruct the jury, consistent with Evidence Code section 403, subdivision (c), to determine whether the consumer expectation test applies to the product at issue in the circumstances of the case and to disregard the evidence about consumer expectations unless the jury finds that the test is applicable. If it finds the test applicable, the jury then must decide whether the product failed to perform as safely as an ordinary consumer would expect when the product is used in an intended or reasonably foreseeable manner. (*Soule, supra,* 8 Cal.4th at p. 569, fn. 6; see BAJI No. 9.00.5.)

 In leaving the question of the applicability of the consumer expectation test for the trier of fact, we envision an inquiry similar to that employed in res ipsa loquitur cases. (See *Pruitt v. General Motors Corp., supra,* 72 Cal.App.4th at p. 1484 [consumer expectation test reserved for "res ipsa-like cases that do not require the application of a general standard to determine defective design," citing Henderson & Twerski, *Achieving Consensus on Defective Product Design, supra,* 83 Cornell L.Rev. 867, 899-900].) In res ipsa cases, there must be some evidence that would support a finding of the existence of the three conditions necessary for the application of the res ipsa presumption before the instruction is given. (See com. to BAJI No. 4.00 (8th ed. 1998), p. 110 ["Whenever the evidence can be said to be conflicting or subject to different inferences, it is a question of fact whether the conditions exist necessary to bring into operation the doctrine of res ipsa loquitur and the question must be submitted to the jury under proper instructions"].)

 [8]BAJI No. 9.00.5 provides in part: "A product is defective in design: [¶] [if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner] [or] [¶] [if there is a risk of danger inherent in the design which outweighs the benefits of that design]."

responses in which McCabe identified her own "expectation" that the air bag would deploy as the basis for finding a design defect and notes that McCabe never cited "risk-benefit" evidence. Contrary to Honda's contention, it is not McCabe's obligation or burden to cite "risk-benefit" evidence. That burden belongs to Honda. (*Barker, supra,* 20 Cal.3d at pp. 431-432; *Soule, supra,* 8 Cal.4th at p. 562; *Bresnahan v. Chrysler Corp., supra,* 32 Cal.App.4th at p. 1565 [where plaintiff proved causation but did not provide evidence as to risk-benefit, nonsuit improper because it is defendant's burden to provide risk-benefit evidence].) McCabe's failure to cite such evidence does not suggest an abandonment or waiver of the risk-benefit theory. On summary judgment, it was Honda's burden to negate McCabe's claim of design defect. Honda's failure to provide any evidence negating design defect under the alternative risk-benefit theory also mandates reversal of the order granting summary judgment.

### DISPOSITION

The judgment is reversed. The matter is remanded for further proceedings not inconsistent with this opinion. McCabe is to recover her costs on appeal.

Lillie, P. J., and Johnson, J., concurred.