Filed 6/21/17; pub. order 7/18/17 (see end of opn.)
Opinion on rehearing

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KAWIKA DEMARA et al., | D068533 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2013-00067711-CU-PL-NC) |
| THE RAYMOND CORPORATION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge. Reversed and remanded with instructions.

Law Office of Christopher Workman, Christopher J. Workman, Aaron M. Sibley, and Margarite M.B. Sullivan for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Anthony E. Sonnett, and Trevor J. Ingold for Defendants and Respondents.

In this products liability case, plaintiffs Kawika Demara (Demara) and Sandra Demara (together, Plaintiffs) appeal from a summary judgment granted in favor of defendants The Raymond Corporation (Raymond) and Raymond Handling Solutions, Inc. (RHSI) (together, Defendants). As relevant to this appeal, Plaintiffs asserted claims for strict liability and negligence based on injuries Demara suffered allegedly as a result of design defects in a forklift designed by Raymond and sold by RHSI.

Depending on the facts of a given case, a claim based on an alleged design defect can be *proven by a plaintiff* under the consumer expectation test, where the plaintiff proves that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner"; additionally, such a claim can be *defeated by a defendant* under the risk-benefit test (where, after the plaintiff presents a prima facie case that a product's design caused damages, the defendant proves that "on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design"). (*Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 432 (*Barker*); see *id.* at p. 435.) In granting summary judgment, the trial court ruled, in part, as follows: (1) Plaintiffs did not establish a triable issue of material fact as to causation; (2) the consumer expectation test did not apply as a matter of law; and (3) for purposes of applying the risk-benefit test, even if Plaintiffs had shown a triable issue of material fact as to causation, Defendants established the requisite elements for the application of the risk-benefit test, and Plaintiffs did not establish a triable issue of material fact as to whether the benefits of the design outweighed the risks of the design.

We conclude that the trial court erred in these rulings.  First, because Plaintiffs' showing as to causation was more than negligible or theoretical, it was sufficient to defeat summary judgment.  Second, Defendants did not meet their burden of establishing as a matter of law that the consumer expectation test does not apply to Plaintiffs' claims.  Third, in applying the risk-benefit test, Defendants failed to present sufficient evidence to shift the burden to Plaintiffs to show a triable issue of material fact.  Accordingly, we reverse the judgment and remand with instructions to deny Defendants' motion.

I.

STATEMENT OF FACTS

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.' "  (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717.)  We consider all the evidence in the moving and opposing papers, except evidence to which objections were made and sustained, liberally construing and reasonably deducing inferences from Plaintiffs' evidence, resolving any doubts in the evidence in Plaintiffs' favor.  (*Id.* at p. 717; Code Civ. Proc., § 437c, subd. (c).)

The product at issue in this lawsuit is a Raymond 7400 series narrow aisle reach forklift, model 740-R35TT and serial number 740-06-DA04252 (Subject Lift).  The Subject Lift was designed by Raymond and sold by RHSI to Seltzer Chemicals.  It was manufactured (by Raymond) in January 2006 as a special order — built to the specifications of Seltzer Chemicals, which later became known as Glanbia Nutritionals (NA), Inc. (Glanbia).

3

Each of the lifts in the Raymond 7400 series (which includes the Subject Lift) has both an electric drive wheel and a caster wheel in the rear. Linked together, these two wheels turn in unison, which allows the lift to pivot as the drive wheel is steered. For example, as the back of the lift swings to its left in reverse, the drive wheel becomes the leading edge as the lift turns.

When it designed the 7400 series, Raymond knew that the lifts would be used in and around warehouse workers. In addition, Raymond knew that if the moving drive wheel came into contact with any body part, the body part could be crushed. The design includes an open area around the drive wheel with no guards, gates, skirts or bumpers. The design also includes an optional amber light that flashes as a warning to pedestrian workers and others in the area when the lift is in use. This light can be attached to the metal guard above the driver's compartment to one side of the lift — with either a top mount, so that the light shines above the guard, or a bottom mount, so that the light shines below the guard. The Subject Lift specially ordered by Seltzer Chemicals had the optional warning light attached to the guard with a top mount.

On September 29, 2011, the Glanbia warehouse in Carlsbad was busy and noisy with lifts operating and pedestrians walking in and around the area of the accident.[1] Demara, who worked as a truck driver for Glanbia, was walking through the warehouse; the Subject Lift was backing up, changing direction and turning to the left with its left rear corner out in front. As the Subject Lift continued its left turn in reverse, the drive

---

[1] We have viewed the video of the accident that is contained in the record on appeal.

4

wheel — which is located in the left rear corner of the lift and was thus leading the turn — ran over Demara's right foot, crushing it. Prior to being struck, Demara did not see the Subject Lift or its warning light. As a result of the injury, Demara has had numerous surgeries on his foot and remains permanently disabled and in pain.

## II.

## STATEMENT OF THE CASE

Plaintiffs filed the underlying action, seeking damages for Demara's injuries and for Sandra Demara's loss of consortium. In a single cause of action for products liability as to the Subject Lift, Plaintiffs alleged two counts — one for strict liability based on claims for defects in the manufacture, design and warnings, and one for negligence. Plaintiffs initially named only RHSI but later amended their complaint to add Raymond as an additional defendant.

Defendants moved for summary judgment or, alternatively, for summary adjudication of claims. In support, Defendants submitted a memorandum of points and authorities, a separate statement of undisputed material facts, an expert's declaration and exhibits. Plaintiffs filed an opposition, which included a memorandum of points and authorities, a responsive separate statement of undisputed material facts, two expert declarations, two percipient witness declarations, exhibits and objections to Defendants' evidence. In reply, Defendants submitted a memorandum of points and authorities, a reply to the responsive separate statement, a declaration with exhibits and objections to Plaintiffs' evidence.

5

By written order, the superior court granted Defendants' motion, concluding in relevant part as follows. First, Plaintiffs failed to establish a triable issue of material fact with regard to whether either the lack of a wheel guard or the placement of the warning light caused Demara's injuries. Second, Defendants established as a matter of law that the Subject Lift was not defectively designed on the following grounds: the consumer expectation test is inapplicable, "because the minimum safety of the [Subject Lift]'s design is not within the common knowledge of ordinary consumers"; and Plaintiffs did not present expert testimony to contradict (or otherwise raise a triable issue of material fact in response to) Defendants' expert's testimony that established, under the risk-benefit test, that "the benefits of the design outweigh the risks of the design."[2] Third, because Plaintiffs did not oppose Defendants' motion for summary adjudication of the claims alleging a manufacturing defect and failure to warn, Defendants were entitled to summary adjudication of those claims.[3]

---

[2] The record contains no rulings on any of Plaintiffs' objections to the evidence submitted by Defendants. As for Defendants' objections to Plaintiffs' evidence, the order granting summary judgment refers to an "attached Order Re: Defendants' Objection to Evidence" and contains a *separate* "Order Re: Defendants' Objection to Evidence" filed on the same date. That document contains each defense objection and a space for the court to check "Sustained" or "Overruled" as to each objection, but contains no check mark or ruling as to any objection. The record contains an "Amended Order Re: Defendants' Objection to Evidence" filed almost three months later which contains rulings on Defendants' evidentiary objections. However, the court lacked jurisdiction to issue those rulings, because by that time Plaintiffs had already appealed from the judgment. (Code Civ. Proc., § 916, subd. (a); *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189.)

[3] Plaintiffs have confirmed their position in this appeal and raise no issues as to those summary adjudication rulings on appeal. Accordingly, we affirm the rulings

6

The court filed a judgment in favor of Defendants and against Plaintiffs. Following notice of entry of the judgment, Plaintiffs timely appealed.

III.

DISCUSSION

We review de novo an order granting summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) As a practical matter, " 'we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' " (*Simmons v. Superior Court* (2016) 7 Cal.App.5th 1113, 1124.) The judgment of the trial court is presumed correct, and Plaintiffs (as the appellants) have the burden of establishing reversible error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, 566.)

A defendant is entitled to a summary judgment on the basis that the "action has no merit" (Code Civ. Proc., § 437c, subd. (a)) only where the court is able to determine from the evidence presented that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (*id.* subd. (c)). A cause of action "has no merit" if one or more of the elements of the cause of action cannot be established, or an affirmative defense to the cause of action can be established. (*Id.* subd. (o).)

The defendant has the ultimate burden of *persuasion* that one or more elements of the cause of action at issue "cannot be established" or that "there is a complete defense to

related to any alleged manufacturing defect or failure to warn without expressing any opinion as to the merits of these rulings.

7

that cause of action."  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849, 850, 853-854.)  In attempting to meet this burden, the defendant has the initial burden of *production* to make a prima facie showing of the nonexistence of any triable issue of material fact.  (*Aguilar*, at p. 850.)  If the defendant meets this burden, then the burden of *production* shifts to the plaintiff to establish the existence of a triable issue of material fact.  (*Id.* at pp. 850-851.)

In this appeal from the grant of a summary judgment, therefore, we determine first whether Defendants' showing establishes their entitlement to judgment in their favor; if so, we then determine whether Plaintiffs' showing establishes a triable issue of material fact.  (*Blackwell v. Vasilas* (2016) 244 Cal.App.4th 160, 168.)

A.    *Introduction*

" 'Products liability is the name currently given to the area of the law involving the liability of those who supply goods or products for the use of others to purchasers, users, and bystanders for losses of various kinds resulting from so-called defects in those products.' "  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 478 (*Merrill*).)  "A manufacturer, distributor, or retailer is liable in tort if a defect in the . . . design of its product causes injury while the product is being used in a reasonably foreseeable way."  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 560 (*Soule*).)

A plaintiff in a products liability case may seek recovery on theories of both strict liability and negligence.  (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387, 383.)  Under either theory, to recover from a manufacturer, the plaintiff must prove that

8

the design was a substantial factor in causing an injury. (*Ibid*.; *Moreno v. Sayre* (1984) 162 Cal.App.3d 116, 124 (*Moreno*); see CACI Nos. 1200-1205, 1220-1222.)

In addition to causation, as applicable here, a strict products liability plaintiff must also establish that the design of the product at issue was defective.[4] (*Webb*, *supra*, 63 Cal.4th at p. 179.) A plaintiff may prove a design defect under *either* of two alternative tests — the consumer expectations test or the risk-benefit test. (*Barker*, *supra*, 20 Cal.3d at pp. 418, 432, 435.) Under the consumer expectations test, the plaintiff may prove the existence of a defect by showing that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." (*Barker*, at p. 432; accord, *id.* at pp. 418, 435; *Saller v. Crown Cork & Seal Co., Inc.* (2010) 187 Cal.App.4th 1220, 1231-1232 (*Saller*); see CACI No. 1203.) Under the risk-benefit test, the plaintiff need establish only a prima facie case of causation, i.e., evidence that a design feature of the product was a substantial factor in causing the plaintiff's injuries. Once the plaintiff makes this showing, the burden shifts to the defendant to establish that, given certain factors, "on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design."[5] (*Barker*, at p. 432; accord, *id.* at p. 435; *Saller*, at pp. 1231-1232; see CACI No. 1204.)

---

4    In other contexts, a product can also be defective in its manufacture or its failure to warn of known risks. (See *Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 179 (*Webb*).)

5    Similarly, in a claim based on *negligent* design of a product, the trier of fact must balance the likelihood and gravity of potential harm from the design at issue against the

The two theories are not mutually exclusive, and depending on the facts and circumstances of the case, *both* may be presented to the trier of fact in the same case. (*Saller*, *supra*, 187 Cal.App.4th at p. 1232; see *Barker*, *supra*, 20 Cal.3d at pp. 418, 430, 435.) Indeed, the two theories are true alternative tests, since (1) the consumer expectation test applies only in cases where the trier of fact can evaluate a product's safety design based on "the everyday experience of the product's users" (*Soule*, *supra*, 8 Cal.4th at p. 567; italics omitted), and (2) a finding that the product's design is not defective under the risk-benefit test does not negate liability under the consumer expectation test (*id.* at p. 566; *Bresnahan v. Chrysler Corp.* (1995) 32 Cal.App.4th 1559, 1569-1570 [risk-benefit test *not* a "counterweight" or " 'defense' " to consumer expectation test]).

B.    *The Trial Court Erred in Granting Summary Judgment Based on a Lack of Causation*

Under both the consumer expectation test and the risk-benefit test, in proving a cause of action for design defect, the plaintiff must establish that the product's failure to perform safely was a substantial factor in causing harm to the plaintiff. (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 119 [risk-benefit test], 126 [consumer expectation test] (*Campbell*); CACI Nos. 1203 [consumer expectation test], 1204 [risk-benefit test]; see generally *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968 (*Rutherford*) [To prove causation in products liability cases, "the plaintiff must prove that the defective products supplied by the defendant were a substantial factor in bringing

---

burden of the measures required to avoid the harm. (*Merrill*, *supra*, 26 Cal.4th at pp. 479-480.)

about his or her injury."].)  CACI No. 430 defines "substantial factor" for purposes of causation in a strict liability case as follows:  "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm.  [¶]  [Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.]."

In the trial court, Defendants moved for summary judgment, in part, on the basis that Plaintiffs cannot establish that the design of the forklift was a substantial factor in causing harm to Demara.  As part of their argument that the design of the Subject Lift was not defective, Defendants argued, with citation to legal authority, that the occurrence of an accident or injury while a product is being used does not, by itself, establish a product defect.  In a single sentence at the end of a paragraph, Defendants concluded, with no citation to authority or evidence:  "[T]he fact that an accident involving the [Subject Lift] occurred is not sufficient evidence . . . *that any alleged defect caused [P]laintiffs' injuries and damages*."[6]  (Italics added.)  That lone assertion does not constitute a sufficient showing of the nonexistence of a triable issue of material fact to have shifted the burden to Plaintiffs on the issue of causation.  (See *Aguilar*, *supra*, 25 Cal.4th at p. 850.)

---

6    In their memorandum of points and authorities in support of their motion, Defendants did not separate their argument alleging a lack of causation from their argument alleging no defect.

11

Where, as here, the plaintiff has the burden of proof of a specific material fact, like causation, by a preponderance of the evidence, for the defendant to be entitled to summary judgment, the defendant must present evidence establishing that no reasonable trier of fact could find the underlying material fact in the plaintiff's favor. (*Aguilar*, *supra*, 25 Cal.4th at p. 851.) Defendants presented neither evidence nor inferences from evidence that suggest that the design was not a substantial factor in bringing about Demara's injury. Because Defendants' statement that the occurrence of the accident was not evidence of a defect that caused Plaintiffs' injuries is not a prima facie showing that Plaintiffs cannot prove causation, the burden of establishing a triable issue of material fact never shifted to Plaintiffs, and the trial court should not have granted Defendants' motion on the basis that *Plaintiffs* did not meet *their* burden of establishing a triable issue of material fact as to causation. (*Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, 1310 ["Because Defendants have failed to establish every fact necessary to show the causes of action against them are without merit, they have failed to meet their initial burden and the motion must be denied."].)

Even if we were to assume that Defendants met their initial burden, the evidence submitted by Plaintiffs in response creates a triable issue of fact as to whether the alleged defects were a substantial factor in causing Demara's injuries. (See *Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.) Our Supreme Court has described the substantial factor standard in a strict products liability context as "a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." (*Rutherford*, *supra*, 16 Cal.4th at p. 978.) In establishing causation on the basis of the manufacturer's

12

failure to provide a particular safety device, a plaintiff may rely on inferences from both direct and circumstantial evidence. (*Campbell*, *supra*, 32 Cal.3d at p. 121.) As a result, "[u]less very unusual circumstances exist, this type of claim presents a factual issue which can only be resolved by the trier of fact." (*Id.* at p. 120.)

In *Pietrone v. American Honda Motor Co.* (1987) 189 Cal.App.3d 1057, for example, the plaintiff was a passenger seated behind her husband on his motorcycle. (*Id.* at p. 1059). An automobile struck the motorcycle and the plaintiff's leg, causing the motorcycle to wobble and the plaintiff's unstable leg to come into contact with the exposed spokes of the motorcycle's rear wheel. (*Ibid.*) In the design defect trial against the manufacturer of the motorcycle, the only evidence of causation that the plaintiff presented was "the open, exposed, rotating rear wheel in close proximity to the passenger's foot pegs." (*Id.* at p. 1061.) "*Without more*," according to the appellate court, "the burden then shifted to [the defendant manufacturer] to justify its adoption and utilization of that particular design." (*Ibid.*, italics added.)

From the evidence submitted, Plaintiffs established: The area on the outside of the drive wheel of the Subject Lift is open, with no guard, gates, skirts or bumpers; as the leading edge of the Subject Lift swung into Demara, his foot went under the lift and was crushed by the exposed wheel. The evidence further established: The Subject Lift had a flashing light attached to the top of the metal guard above the driver's compartment; at certain close distances, the light on the overhead guard was not visible to, and was thus ineffective as a warning light for, pedestrians; and Demara did not see the light (or the Subject Lift) as the lift approached and swung toward him before striking him. Given

13

this evidence and the inferences from this evidence, the trial court erred in ruling that Plaintiffs did not meet their burden of establishing a triable issue of material fact as to causation.

C.    *The Trial Court Erred in Granting Summary Judgment Based on the Lack of a Defect*

In a products liability cause of action, the consumer expectation test is a theory by which a plaintiff may prove the existence of a design defect, and the risk-benefit test is a theory by which the defendant may prove the nonexistence of a design defect.  (*Barker*, *supra*, 20 Cal.3d at pp. 431-432, 435.)  *Both* tests are acceptable theories in the same case.  (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1312; see *Saller*, *supra*, 187 Cal.App.4th at p. 1232.)  "This dual standard for design defect assures an injured plaintiff protection from products that either fall below ordinary consumer expectations as to safety, or that, on balance, are not as safely designed as they should be."  (*Barker*, at p. 418.)

Defendants argue, and the trial court ruled, that *only* the risk-benefit test applies, because the appropriate analysis of the Subject Lift's design "necessarily involved determining technical issues of 'feasibility, cost, practicality, risk, and benefit,' " which cannot be resolved on the basis of ordinary consumer expectations.  (Quoting *Soule*, *supra*, 8 Cal.4th at pp. 562, 567.)  In contrast, Plaintiffs argue that the consumer expectation test applies on the basis that, in the context of the facts and circumstances *in this case*, the Subject Lift is the kind of product " 'about which . . . ordinary consumers can form minimum safety expectations.' "  (Quoting *Pannu v. Land Rover North*

*America, Inc.* (2011) 191 Cal.App.4th 1298, 1311-1312.) Which test(s) to apply depends on the particular facts of the case. (*Soule*, at p. 566.)

Whether alleged as a strict liability claim or a negligence claim, a plaintiff must first establish the existence of a defective design. (*Lambert v. General Motors* (1998) 67 Cal.App.4th 1179, 1185 ["Where liability depends on the proof of a design defect, no practical difference exists between negligence and strict liability; the claims merge."]; *Moreno*, *supra*, 162 Cal.App.3d at p. 124 [whether "cast in the principles of negligence or manufacturer's strict liability, plaintiff had the burden of proving that there was a defect in [the defendant's] product"].) To establish the existence or nonexistence of a defective design, the parties must proceed under the consumer expectation test, the risk-benefit test, or both. (*Barker*, *supra*, 20 Cal.3d at pp. 418, 426-427, 432, 435; *Saller*, *supra*, 187 Cal.App.4th at pp. 1231-1232.) We conclude that under both of these tests, Defendants failed to carry their burden in moving for summary judgment.

1.      *Consumer Expectation Test*

Under the consumer expectation test, a product is defective in design if it failed to perform as safely as an ordinary consumer would expect, or have a right to expect, when using the product in an intended or reasonably foreseeable manner. (*Barker*, *supra*, 20 Cal.3d at pp. 432, 435; see generally *id*. at pp. 418, 429-430.) Because this test applies in cases in which jurors can evaluate a product's safety design based on "the everyday experience of the product's users" (*Soule*, *supra*, 8 Cal.4th at p. 567, italics omitted), the crucial question is whether the circumstances of the product's failure may properly permit "*an inference* that the product's design performed below the legitimate, commonly

15

accepted minimum safety assumptions of its ordinary consumers" (*id.* at pp. 568-569,

italics added).[7]  (See generally *Soule*, at pp. 567-569.)  At trial, a plaintiff proceeding

under the consumer expectation test must present a prima facie case of the requisite

causation and must produce evidence that the product failed to satisfy ordinary consumer

expectations as to safety.  (*Barker*, at p. 430; *Soule*, at pp. 563-567.)

As we explained at part III.B., *ante*, Defendants are not entitled to summary

judgment based on a lack of causation.  As part of their motion, Defendants did not

attempt to meet their initial burden of showing that Plaintiffs could not produce evidence

that the product failed to satisfy ordinary consumer expectations as to safety.  Instead,

they argued that, as a matter of law, the consumer expectation test is inapplicable to the

Subject Lift, because the Subject Lift is a "complex piece of industrial equipment"

"beyond the typical understanding of the ordinary consumer."  The trial court agreed and

declined to apply the consumer expectation test on the basis that "the minimum safety of

the [Subject Lift]'s design is not within the common knowledge of ordinary consumers"

— at least in part because "the analysis of the [Subject Lift]'s design necessarily involves

determining technical issues of feasibility, cost, practicality, risk and benefit, . . . [which]

require[s] expert opinion about the merits or deficiencies of the design."[8]  On appeal,

---

[7]     In this context, an "ordinary consumer" is "a hypothetical reasonable consumer" of
the product, not the particular plaintiff in a case.  (*Campbell*, *supra*, 32 Cal.3d at p. 126,
fn. 6; accord, *Soule*, *supra*, 8 Cal.4th at p. 567 [focus is on "the product's users"].)

[8]     Plaintiffs did not submit expert testimony in support of their argument that they
could establish the existence (or at least a triable issue of material fact as to the existence)
of a design defect under the consumer expectation test.  Nor were they required to.

16

Defendants continue to assert that the consumer expectation test cannot apply to Plaintiffs' claims, because the ordinary consumer has no experience, and thus no expectation, as to the design and safety of the Subject Lift — a complex and technical product.

However, the "inherent complexity of the product itself is not controlling" in determining whether the consumer expectation test applies. (*McCabe v. American Honda Motor Co.* (2002) 100 Cal.App.4th 1111, 1122, fn. 5 (*McCabe*).) For example, in certain circumstances, where a technically complex product performs "so unsafely that the defect is apparent to the common reason, experience, and understanding of its ordinary consumers," a lay jury is competent to determine whether the product's design is unsafe. (*Soule*, *supra*, 8 Cal.4th at p. 569.) Accordingly, the critical question is whether the "*circumstances of the product's failure* permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers." (*Id.* at pp. 568-569, italics added.) "If the facts permit an inference that the product at issue is one about which consumers may form minimum safety assumptions in the context of a particular accident, then it is enough for a plaintiff, proceeding under the consumer expectation test, to show the circumstances of the accident and 'the objective features of the product which are relevant to an evaluation of

Because the consumer expectation test is based on minimum safety that is within the knowledge of lay jurors, "expert witnesses may not be used to demonstrate what an ordinary consumer would or should expect." (*Soule*, *supra*, 8 Cal.4th at p. 567; but see *id.* at p. 567, fn. 4 [plaintiff *may* present expert testimony "on the limited subject of what the product's actual consumers *do expect*" where the expectations of the product's group of ordinary consumers are beyond common lay experience].)

17

its safety' (*Soule*, at p. 564), leaving it to the fact-finder to 'employ "[its] own sense of whether the product meets ordinary expectations as to its safety under the circumstances presented by the evidence." ' (*Soule*, *supra*, 8 Cal.4th at p. 563; *Campbell*[, *supra*,] 32 Cal.3d 112, 126.)" (*McCabe*, *supra*, 100 Cal.App.4th at p. 1120.)

Further, contrary to Defendants' argument, the consumer expectation test is not based on minimum safety assumptions or expectations of consumers in general regarding a product but rather, on the minimum safety assumptions or expectations of the "product's users." (*Soule*, *supra*, 8 Cal.4th at p. 567; see fn. 7, *ante*.) In this context, a product's users include anyone whose injury was "reasonably foreseeable." (*Elmore v. American Motors Corp.* (1969) 70 Cal.2d 578, 586.) Without limitation, that includes a bystander injured by the allegedly defective product. (*Ibid.* [bystander injured following a two-vehicle accident caused by allegedly defective drive shaft]; *Foglio v. Western Auto Supply* (1976) 56 Cal.App.3d 470, 472 [onlooker's eye injured by debris kicked up by allegedly defective lawnmower].) In the present appeal, therefore, for purposes of determining whether the consumer expectation test applies, we may focus on the minimum safety assumptions or expectations of those present in a warehouse with pedestrian traffic in which the Subject Lift was designed for use.

In *Barker*, *supra*, 20 Cal.3d 413, the operator of a high-lift loader — i.e., a piece of heavy construction equipment that lifts loads by forks similar to the forks on a forklift — was injured as he attempted to lift a load of lumber to the second story of a building 18 to 20 feet above the ground. (*Id.* at p. 419.) The loader was on a slope and began to tip as it raised the load. (*Ibid.*) The operator jumped off the tipping loader and was

18

struck by a load of lumber that fell from the forks. (*Ibid.*) The operator alleged a strict products liability claim based on a design defect (without elaborating on the express defect). (*Id.* at pp. 422-423.) In reversing the judgment following a nonsuit, the Supreme Court held that, upon a proper showing in a design defect strict liability case, a trial court may instruct a jury under both the consumer expectation test and the risk-benefit test. (*Id.* at p. 435.) In so doing, the court implicitly recognized that on remand, under the circumstances of that case, the consumer expectation test could apply to the alleged design defect in the high-lift loader.

In *Campbell*, *supra*, 32 Cal.3d 112, a passenger on a city bus was injured when the bus made a sharp turn and she was thrown to the floor. (*Id.* at pp. 116-117.) The injured passenger sued the bus manufacturer, alleging strict products liability due to a design defect based on the lack of a handrail or guardrail near her seat. (*Id.* at p. 116.) On appeal after the grant of a nonsuit, the Supreme Court reversed, in relevant part concluding that the passenger had presented sufficient evidence for the case to go to the jury under the consumer expectation test. (*Id.* at pp. 126-127.) No expert testimony was required to allow the jurors to determine whether the product met the ordinary expectations as to the safety of the product under the circumstances: "Not only did she testify about the accident (her use of the product), but she also introduced photographic evidence of the design features of the bus. This evidence was sufficient to establish the objective conditions of the product." (*Id.* at p. 126.)

In *McCabe*, *supra*, 100 Cal.App.4th 1111, the driver of a car was injured when its side air bag failed to deploy in a head-on collision. (*Id.* at p. 1116.) In the plaintiff's

defective product liability claim against the manufacturer and seller of her vehicle, the trial court granted the defendants' motion for summary judgment (*id.* at p. 1116) — in relevant part based on the defendants' argument that the consumer expectation test did not apply, because the deployment of an air bag involves the consideration of sophisticated technology outside the experience of an ordinary consumer (*id.* at p. 1118). The appellate court reversed, ruling that the trial court erred in concluding as a matter of law that the consumer expectation test did not apply. (*Id.* at p. 1116.) In response to the defendants' expert's testimony that the accident occurred at a speed and at a collision range outside that required for the air bag to deploy, the plaintiff presented evidence only that "the accident was a 'head-on' collision, occurring *within* the 'frontal collision range' depicted in [the manufacturer]'s owner's manual." (*Id.* at p. 1124.) Unpersuaded that an understanding of sophisticated technology was necessary, the appellate court held that the plaintiff had presented "sufficient evidence from which a jury could infer that the failure of an air bag to deploy under the facts and circumstances advanced by [the plaintiff] violates commonly held minimum safety assumptions within the every day [*sic*] experience of ordinary consumers." (*Id.* at p. 1125.)

In *Saller*, *supra*, 187 Cal.App.4th 1220, the plaintiffs' decedent died from mesothelioma following exposure at work to asbestos contained in pipe insulation at a refinery. (*Id.* at pp. 1225, 1231.) At the trial on the plaintiffs' claim for strict products liability based on a defectively designed product, the trial court refused the plaintiffs' request for jury instructions on the consumer expectation test, and the jury returned a defense verdict. (*Id.* at pp. 1229-1231.) Reversing the judgment, the appellate court

concluded that the decedent's testimony regarding his knowledge concerning the characteristics of the asbestos insulation used at the refinery was sufficient to require the plaintiffs' requested instructions under the consumer expectation test.[9] (*Saller*, at pp. 1236 & fn. 11, 1241.)  The court accepted the plaintiffs' arguments that there was nothing complicated or obscure about the (chemical) design of the insulation and that the product was dangerous in the normal course of its intended use.  (*Id.* at p. 1235.) Because "[t]he use of asbestos insulation is a product that is within the understanding of ordinary lay consumers[,]" "the jury could infer that the ordinary consumer of the product, namely refinery workers, would assume that the use of the product was safe, notwithstanding the amount of dust produced."  (*Id.* at p. 1236.)

These authorities reinforce the concept that, depending on the circumstances of a particular case, the consumer expectation test can apply to complex or technical products, even where the use of these products may not be within the common knowledge of jurors. In our independent review of the record in this appeal (*Aguilar*, *supra*, 25 Cal.4th at p. 860), we have assumed that the overall design of the Subject Lift is technical and complex.  Nonetheless, as we explain, on this record we have no difficulty concluding that the circumstances that resulted in Demara's injury and the relevant features of the Subject Lift — namely, an unguarded wheel and the placement of a warning light — are

---

[9]     Notably, the plaintiffs did not present evidence from refinery workers (or from the decedent prior to his death) concerning their specific expectations on the safety of the asbestos insulation used.  (*Saller*, *supra*, 187 Cal.App.4th at p. 1236, fn. 11.) " ' "[O]rdinary knowledge . . . as to . . . [the product's] characteristics" . . . may permit an inference that the product did not perform as safely as it should.' " (*Ibid.*, quoting from *Soule*, *supra*, 8 Cal.4th at p. 566.)

not overly technical or so complex as to preclude jurors from using their own judgment to determine (1) whether the ordinary consumers of the Subject Lift would have minimum safety assumptions or expectations where the product was being used in a warehouse with pedestrians, and if so (2) whether the Subject Lift's design fell below those assumptions or expectations.

The drive wheel, which is what crushed Demara's right foot, is located on the back left side of the Subject Lift. The exhibits in the record inform that the Subject Lift has a solid guard or skirt at the bottom that extends from its base to the floor, almost touching the floor, on its left and rear sides — *except where there is a cutout area at the left rear corner* that exposes the drive wheel. The Subject Lift also has a flashing warning light attached to the top of a guard rail that is located above where the driver stands and across the width of the lift.

Based on this information, jurors could reasonably find that the ordinary consumers of the Subject Lift included workers in the warehouse in which the Subject Lift was being operated. Further, jurors could reasonably find that these ordinary consumers of the Subject Lift could form certain minimum safety assumptions and expectations for the product — in particular, both (1) for the partial guard (or skirt) at the base of the lift, and (2) for the placement of the warning light on the top of the guard rail. Correspondingly, jurors could reasonably find that the Subject Lift's design fell below these assumptions and expectations — for example, (1) by not including a complete guard (or skirt) at the base of the lift that fully covers the area around the drive wheel so that the wheel is not exposed, and (1) by placing the warning light in a location from

22

which nearby pedestrians are not able to see it flashing. Potential findings like these do not involve complex or sophisticated technology or an understanding of concepts outside the scope of everyday experiences of the consumers of the product.

For the foregoing reasons, Defendants did not meet their burden of establishing that the consumer expectation test is not applicable to Plaintiffs' claims, and the trial court erred in concluding otherwise. Although this error is sufficient to reverse the judgment without a discussion of the risk-benefit test, we will briefly review the trial court's ruling regarding the applicability of that test, for the benefit of the trial court and parties on remand.

2.      *Risk-Benefit Test*

Under the risk-benefit test, after the plaintiff makes a prima facie showing of causation, i.e., that the design of the product was a substantial factor in bringing about the plaintiff's injury, the burden of persuasion shifts to the defendant to establish that the benefits of the design, in light of the feasibility and costs of an alternative design, outweigh the risks of danger inherent in the design. (*Barker*, *supra*, 20 Cal.3d at pp. 431-432, 435; *Campbell*, *supra*, 32 Cal.3d at pp. 118-119.)

This standard requires the trier of fact to consider "among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." (*Barker*, *supra*, 20 Cal.3d at p. 431, quoted in *Merrill*, *supra*, 26 Cal.4th at p. 479.) As applicable in summary judgment proceedings,

23

where (as here) the issue is the existence of a defect in the product's design under the risk-benefit test, the burden lies with the moving defendant to show prima facie, " '*in light of the relevant factors*, that the product is not defective.' " (*Campbell*, *supra*, 32 Cal.3d at p. 119, italics added.) Because this showing involves "technical issues of feasibility, cost, practicality, risk, and benefit ([*Barker*], at p. 431) which are 'impossible' to avoid (*id.* at p. 433) . . . , the [factfinder] *must* consider the manufacturer's evidence of competing design considerations (*id*. at pp. 433-434)." (*Soule*, *supra*, 8 Cal.4th at p. 567.) In such a case, expert testimony is required. (*Id.* at pp. 567-568 [under risk-benefit test, design defect cannot be resolved by "reference to the 'expectations' of an 'ordinary consumer' "].)

Given the foregoing factors to be considered, Defendants' expert's declaration is insufficient to have shifted the burden to Plaintiffs to establish a triable issue of material fact. Although Defendants' expert provided testimony of certain "benefits" of both the open unguarded drive wheel and the top-mounted placement of the warning light, Defendants presented no evidence — from this expert or otherwise — of either the "risks" of those design features or other competing design possibilities. This is very similar to the situation in *Gonzalez v. Autoliv ASP, Inc.* (2007) 154 Cal.App.4th 780, where the appellate court reversed a summary judgment for the defendant in a strict products liability defective design case, because the defendant "offered no evidence that the benefits of the design outweigh its inherent risks — evidence necessary to show the absence of a design defect, a burden carried by the defendant." (*Id.* at p. 787; accord, *McCabe*, *supra*, 100 Cal.App.4th at pp. 1118, 1127 [defense summary judgment reversed

24

where defense expert opined only that the product performed as designed, and defendant offered no evidence that the benefits of the design outweighed the risks].)

For these reasons, Defendants did not meet their burden of establishing that the risk-benefit test applies to defeat Plaintiffs' claims. Thus, the trial court erred in granting summary judgment based on the risk-benefit test.

D.      *We Do Not Consider, and Thus Do Not Express an Opinion on, the Evidentiary Issues Raised by the Parties*

Plaintiffs and Defendants each filed objections to some of the evidence submitted by the other, and on appeal, both Plaintiffs and Defendants argue that the trial court erred in overruling their respective objections. However, the trial court never ruled on Plaintiffs' objections, and the court did not have jurisdiction at the time it ruled on Defendants' objections (see fn. 2, *ante*). As a result, the record contains no evidentiary rulings that we can review on appeal. Accordingly, we must proceed as if the trial court had overruled both parties' evidentiary objections. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)

Because we have concluded that the trial court erred in granting summary judgment *regardless of the admission of the allegedly objectionable evidence*, any potential error in admitting the evidence was not prejudicial to Plaintiffs. Similarly, Defendants expressly recognize that they were not prejudiced by the trial court's rulings.

Accordingly, we do not consider — and thus do not express an opinion on — the merits of any of the evidentiary objections raised by the parties in this appeal.

25

DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with instructions to enter an order denying Defendants' motion for summary judgment, denying Defendants' motion for summary adjudication of Plaintiffs' claims for negligence and for defective design, and granting Defendants' motion for summary adjudication of Plaintiff's claims for defective manufacturing and for failure to warn. Kawika Demara and Sandra Demara are entitled to their costs on appeal from The Raymond Corporation and Raymond Handling Solutions, Inc.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

26

Filed 7/18/17

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KAWIKA DEMARA et al., | D068533 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2013-00067711-CU-PL-NC) |
| THE RAYMOND CORPORATION et al., | |
| Defendants and Respondents. | ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed June 21, 2017, was not certified for publication. The July 11, 2017 request for publication filed by Jeffrey I. Ehrlich individually and on behalf of the Consumer Attorneys of California is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c); and

1

ORDERED that the words "Not To Be Published In Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____
MCCONNELL, P. J.


Copies to:    All parties
Ehrlich Law Firm, Attention:  Jeffrey I. Ehrlich
Barr & Mudford, Attention:  Catie Barr
Greene Broillet & Wheeler, Attention:  Molly M. McKibben

2