Filed 12/26/23  Nazari v. Walter Kidde Portable Equipment CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ARTHUR NAZARI, Individually and as Trustee, etc. et al.,<br><br>Cross-complainants and Appellants,<br><br>v.<br><br>WALTER KIDDE PORTABLE EQUIPMENT, INC.,<br><br>Cross-defendant and Respondent. | B324236<br>(Los Angeles County<br>Super. Ct. No. 19STCV32605) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jill T. Feeney, Judge.  Affirmed.

Grant, Genovese & Baratta, Lance D. Orloff, and Destini C. Blunt, for Cross-complainants and Appellants.

McGuireWoods, Nicholas J. Hoffman, and S. Virginia Bondurant Price, for Cross-defendant and Respondent.

Haik Minassi (Minassi or decedent) suffered fatal injuries from a fire that started in his apartment while he was sleeping. The smoke alarm inside his unit did not sound. His successors-in-interest filed a lawsuit against the decedent's landlords, cross-complainants and appellants Arthur Nazari (Nazari) and Caroline Mosessian (Mosessian), individually and as trustees of the Nazari-Mosessian Revocable Trust, for damages relating to his death.

Nazari and Mosessian filed a cross-complaint against the smoke alarm's manufacturer, cross-defendant and respondent Walter Kidde Portable Equipment, Inc. (Kidde), alleging the alarm was defective. Kidde moved for summary judgment, arguing that Nazari and Mosessian could not establish causation as to any of their cross-claims because the undisputed facts established that someone intentionally disabled the alarm after it left Kidde's control. The trial court granted the motion and entered judgment, from which Nazari and Mosessian appeal. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**
**A.      The Fire and Appellants' Cross-Complaint**

Nazari and Mosessian own and manage an apartment complex in Glendale, California. In July 2018, they leased an apartment to Minassi. Before Minassi moved into the unit, Nazari's and Mosessian's maintenance worker purchased a Kidde model i9010 smoke alarm from Home Depot and installed it in Minassi's unit. The maintenance worker tested the alarm and confirmed it was functioning properly.

Nazari described Minassi as a heavy smoker. The maintenance worker corroborated this, stating Minassi was

2

smoking every time he saw him.  During one of their interactions, Minassi complained to the maintenance worker that the alarm was making a lot of noise and asked him to uninstall it.  The maintenance worker told him he could not do so.

On May 31, 2019, Minassi was asleep in his apartment when a fire broke out inside his unit.  None of Minassi's neighbors heard a smoke alarm at any time.  His neighbors noticed smoke coming out of his air conditioning unit and called 911.  First responders entered the apartment and found him unconscious on the floor.  Minassi was transported to the hospital, where he succumbed to his injuries more than a month later.

Minassi's successors-in-interest filed a lawsuit against Nazari and Mosessian.  They alleged that the smoke alarm in the unit did not activate and alert Minassi to the fire because it was improperly and negligently installed.

Nazari and Mosessian subsequently asserted cross-claims against Kidde for indemnification, apportionment of fault, declaratory relief, general negligence, and products liability as the manufacturer of the alarm.  They claimed the alarm was defective when it left Kidde's control.

### B.    Kidde's i9010 Smoke Alarm

Kidde manufactured the i9010 smoke alarm in May 2016.  Unlike smoke alarms powered by 9-volt or AA batteries, the alarm has a sealed-lithium battery with a lifespan of many years.  The lithium battery is internal and cannot be accessed by the user or removed.  To install the alarm, its mounting plate is screwed to a wall or ceiling, and the alarm is then twisted onto the mounting plate.  This activates a switch on the alarm's circuit

3

board that turns the alarm on and powers the battery. The lithium battery is intended to last for 10 years under normal operating conditions.

On the back of the alarm, there is a label that provides information and warnings. It explains how to permanently disable the alarm. A screwdriver is inserted into a specific area on the back of the alarm, marked with a cross-hatched square. The inserted screwdriver is then used to push a switch to the left, discharging the battery and rendering the alarm disabled. Specifically, the label states, "To deactivate: Break out the cross[-]hatched area above and, with a screwdriver or similar tool, slide the exposed piece towards the center of the alarm. This will deactivate the alarm and discharge the battery." Immediately below the cross-hatched square, the following words of caution appear: "!!WARNING!! [¶] DO NOT DEACTIVATE THE ALARM UNTIL THE END OF ALARM LIFE SIGNAL IS HEARD. THE END OF ALARM LIFE SIGNAL IS AN INTERMITTANT [*SIC*] CHIRP (EVERY 45 SECONDS). ONCE THE ALARM IS DEACTIVATED, IT WILL NO LONGER FUNCTION, CANNOT BE REACTIVATED, AND MUST BE REPLACED." The label adds that once the battery is discharged, "[t]he alarm will then be safe for disposal."

## C.  Laboratory Examination of the Smoke Alarm

In September 2021, the parties conducted a laboratory examination of the remnants of the smoke alarm from the decedent's apartment. Kidde's expert, Stephen Olenick, determined that at the approximate location of the cross-hatched area, the label was torn and "folded accordion-style[,] indicating that [the switch at the rear of the alarm] ha[d] been pushed to

4

the left and disabled." In the cross-hatched access area, there was tearing indicative of an initial stab mark that likely lifted the label out of the way so that the switch could be pushed. Additionally, Olenick found that the heat from the fire did not breach the smoke alarm's battery, which could have drained it if it did. Olenick concluded, based on the inspection, that the alarm was permanently disabled before the fire and after it was installed in the decedent's unit. Nazari and Mosessian do not dispute the conclusion that the alarm was disabled prior to the fire. They insist the decedent was the person that disabled the alarm.

## D.     Kidde's Motion for Summary Judgment

Kidde moved for summary judgment as to Nazari's and Mosessian's cross-complaint, arguing the undisputed facts established that someone intentionally disabled the smoke alarm after it left Kidde's control. Kidde contended that as a result, Nazari and Mosessian could not establish causation for any of their cross-claims.

In opposition, Nazari and Mosessian argued there was a triable issue of fact as to whether the risks of the design of the alarm outweighed its benefits. Nazari and Mosessian further argued there was a triable issue as to whether the alarm contained an adequate warning because the labeling could lead a user to mistakenly discharge the battery. They submitted a declaration from their expert, Phil Van Herle, P.E., in support of their opposition.

In reply, Kidde asserted that Van Herle's declaration was based on speculation and conjecture, and thus, was insufficient to raise a triable issue of fact. Further, Kidde contended that the

5

undisputed act of a third party intentionally disabling the alarm severed any link between Kidde and Minassi's death.

The trial court granted Kidde's motion.[1]  The court concluded Kidde met its burden of showing that Nazari and Mosessian could not establish causation for any of their cross-claims because the evidence demonstrated the smoke alarm was not defective, and the causal link between Kidde and decedent's injuries was broken by an independent intervening force.  The court then found Nazari and Mosessian failed to raise a triable issue of fact.  Although they argued that a user could mistakenly discharge the battery, the court explained, "Van Herle engage[d] in rank speculation with respect to [d]ecedent's actions," as there was no evidence the decedent was confused by the alarm's layout or warnings.  Nazari and Mosessian timely appealed.

## DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of the University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  A cross-defendant moving for summary judgment must show that one or more elements of the cross-complainant's cause of action cannot be established or that there is a complete defense.  (Code Civ. Proc., § 437c, subd. (p)(2).)  If the cross-defendant meets this burden, the burden shifts to the cross-complainant to present evidence creating a triable issue of material fact.  (*Ibid.*)  "There is a triable issue of material fact if, and only if, the evidence

_____

[1]     No reporter's transcript of the hearing is part of the record on appeal.

6

would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 637.) "We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons." (*Ibid.*)

## B.    Kidde Met its Initial Summary Judgment Burden

Nazari and Mosessian contend the trial court erred in finding Kidde met the moving burden of proof on summary judgment. We disagree.

In moving for summary judgment, Kidde needed to show that Nazari and Mosessian could not establish one or more elements of their causes of action. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 853.) Each cross-claim asserted by Nazari and Mosessian requires a showing that Kidde's alleged wrongful conduct was the proximate cause of the claimed damages.[2]

---

[2]    *Peredia v. HR Mobile Services, Inc.* (2018) 25 Cal.App.5th 680, 687 ["The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages"]; *Demara v. The Raymond Corp.* (2017) 13 Cal.App.5th 545, 553 [a plaintiff in a products liability case may seek recovery on theories of both strict liability and negligence; under each theory, "the plaintiff must prove that the

7

Kidde argued Nazari and Mosessian could not prove that Kidde caused any of the damages alleged in the cross-complaint. The evidence showed that the smoke alarm possessed a built-in mechanism to disable the internal battery once the alarm needed to be replaced. The alarm was not in a disabled condition when it left Kidde's control. The built-in mechanism was used to disable the alarm before the fire.

Nazari and Mosessian acknowledge the trial court determined "the decedent's act of disabling the fire alarm was an intervening factor that broke the causal chain." Nazari and Mosessian do not in their opening brief challenge the trial court's finding negating the causation element of their cross-claims.[3] Causation is a separate element that must be proven under either a design defect or failure to warn theory, which are the theories Nazari and Mosessian advance on appeal. (*Demara v. The Raymond Corp.*, *supra*, 13 Cal.App.5th at p. 558 ["a plaintiff proceeding under the consumer expectation test must present a

---

design was a substantial factor in causing an injury"]; *Major Clients Agency v. Diemer* (1998) 67 Cal.App.4th 1116, 1131 ["The basis of an action for equitable indemnity is a joint legal obligation to another for damages. [Citation.] . . . '[T]here can be no indemnity without liability' [citation], meaning that if the record does not establish that a defendant is a concurrent tortfeasor responsible in some measure for the injuries suffered by the plaintiff, that defendant is not subject to a claim for indemnity by another defendant"]; *Mendoza v. Club Car, Inc.* (2000) 81 Cal.App.4th 287, 305 [apportionment of fault not required against defendants who are not at fault].

[3]      In their reply brief, Nazari and Mosessian cite to *Camacho v. JLG Industries Inc.* (2023) 93 Cal.App.5th 809 in asserting they raise triable issues of fact pertaining to causation. *Camacho* is distinguishable in that there was no undisputed intervening factor that broke the causal chain.

8

prima facie case of the requisite causation and must produce evidence that the product failed to satisfy ordinary consumer expectations as to safety"]; *Torres v. Xomox Corp.* (1996) 49 Cal.App.4th 1, 16 [whether a plaintiff seeks damages for failure to warn on a strict products liability or negligence theory, proof that the failure to warn was a legal cause of injury is a requisite element for recovery]; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 (*Soule*) ["A manufacturer is liable only when a defect in its product was a legal cause of injury"].)  Thus, the summary judgment may be affirmed on the basis that the finding of a lack of causation between Kidde's actions and the claimed damages has not been appealed.

## C.   Nazari and Mosessian Do Not Raise a Triable Issue of Material Fact

Nevertheless, Nazari and Mosessian argue they produced sufficient evidence to raise triable issues of fact concerning (1) whether the alarm was defectively designed under the consumer expectation test and (2) whether the alarm had an adequate warning.  We disagree.

### 1.   *Nazari and Mosessian Did Not Raise Arguments Regarding the Consumer Expectation Test in the Trial Court*

Nazari and Mosessian assert that the trial court erred by refusing to consider how the consumer expectation test applies to landlords that purchase smoke alarms.  However, Nazari and Mosessian failed to raise this argument sufficiently for the court to consider.  We conclude the claim is forfeited.

9

"'"[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." . . . Such arguments raised for the first time on appeal are generally deemed forfeited.' [Citation.]" (*Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635.)  It is not appropriate "to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.  [Citation.]  . . .  Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178; see *Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649 ["[t]he critical point for preservation of claims on appeal is that the asserted error must have been brought to the attention of the trial court"].)

When a party opposes a motion for summary judgment, it must develop the theories upon which its opposition depends and identify the evidence necessary to support such theories. (*Magallanes de Valle v. Doctors Medical Center of Modesto* (2022) 80 Cal.App.5th 914, 924.)  It is not enough simply to mention a theory. (*Natkin v. California Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1011.)  The theory must be presented sufficiently for the moving party and the court to know that it is being relied upon so that they can respond to and analyze it. (*Ibid*.)  A party opposing summary judgment should not wait until judgment is entered, and then appeal on the basis of an alternate theory and evidence that it declined to utilize in the first instance.

In the context of strict products liability, the existence of a design defect may be established under one of two alternative tests: the consumer expectation test or the risk-benefit test. (*Kim v. Toyota Motor Corp.* (2018) 6 Cal.5th 21, 30, citing *Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 429–430.) Each test has different elements and requires different evidence. (*Kim, supra,* 6 Cal.5th at p. 30; see also CACI §§ 1203 and 1204.) Nazari and Mosessian cite no authority showing that broadly arguing a product was defectively designed is sufficient to preserve arguments concerning both the consumer expectation test and the risk-benefit test for appeal.

In opposing Kidde's motion for summary judgment, Nazari and Mosessian acknowledged that a design defect may be proved using the consumer expectation test or the risk-benefit test, but they proceeded to argue the risk-benefit test should be applied in their case. Nazari and Mosessian specifically argued, "[A] triable issue of fact exists as to whether the risks of the design of the Kidde Smoke Alarm outweigh[ ] its benefits." They did not analyze how the consumer expectation test would apply to their case or identify what evidence would relate to the test. Indeed, they did not submit a declaration speaking to their expectations of the alarm.[4] (See *Kim v. Toyota Motor Corp., supra,* 6 Cal.5th at p. 30.) Thus, Kidde had no cause to reply to the argument, and the trial court had no cause to consider it. Nazari and Mosessian,

---

[4] On appeal, Nazari and Mosessian contend they submitted evidence from their expert showing the smoke alarm failed the consumer expectation test. "[E]xpert witnesses may not be used to demonstrate what an ordinary consumer would or should expect." (*Soule, supra,* 8 Cal.4th at p. 567.) Further, their expert did not actually opine that ordinary consumers would expect that an alarm could not be intentionally disabled.

11

thus, forfeited this argument. (*Truck Ins. Exchange v. AMCO Ins. Co.*, *supra*, 56 Cal.App.5th at p. 635; *Magallanes de Valle v. Doctors Medical Center of Modesto*, *supra*, 80 Cal.App.5th at p. 924.)

      2.     *Nazari and Mosessian Do Not Raise a Triable Issue Under a Failure to Warn Theory*

Next, Nazari and Mosessian contend there is a triable issue of fact as to whether the subject smoke alarm contained an adequate warning because the deactivation switch design and warnings can result in a user accidentally discharging the alarm's battery. We conclude Nazari and Mosessian do not raise a triable issue of fact.

California law recognizes that a product may be defective based on inadequate warnings. (*Webb v. Special Elec. Co., Inc.* (2016) 63 Cal.4th 167, 180.) A claim based on failure to warn requires that "the plaintiff . . . prove the defendant's failure to warn was a substantial factor in causing his or her injury." (*Huitt v. Southern California Gas Co.* (2010) 188 Cal.App.4th 1586, 1604 (*Huitt*).) "The natural corollary to this requirement is that a defendant is not liable to a plaintiff if the injury would have occurred even if the defendant had issued adequate warnings." (*Ibid.*)

In this case, a user could use a tool, such as a screwdriver, to access the cross-hatched area on the back of the smoke alarm, move a switch to the left, and permanently disable the lithium battery. Immediately below the cross-hatched area was the following language: "!!WARNING!! [¶] DO NOT DEACTIVATE THE ALARM UNTIL THE END OF ALARM LIFE SIGNAL IS HEARD. . . . ONCE THE ALARM IS DEACTIVATED, IT WILL

12

NO LONGER FUNCTION, CANNOT BE REACTIVATED, AND MUST BE REPLACED." Consequently, the alarm's labeling warned users that once the alarm was deactivated, the alarm would be inoperable.

Nazari and Mosessian do not dispute that the decedent intentionally disabled the alarm. Nazari and Mosessian argue, based exclusively on the declaration of their expert, Van Herle, Minassi could have mistakenly discharged the smoke alarm's battery. Van Herle opined, "Based on the subject design, instruction and warning labeling and layout[,] it appears reasonably possible that Minassi may have thought he had temporarily turned off the detector, possibly for a nuisance sounding alarm, not realizing that once he did that[,] it could not be turned back on and that he would have deenergized the 10-year life battery within it."

However, Van Herle offers no facts to support his speculation that Minassi meant to temporarily turn off the smoke alarm or may have been confused by the alarm's instructions. "'[A]n expert's opinion based on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors [citation], has no evidentiary value [citation]." (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 155.) "Similarly, when an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, that opinion has no evidentiary value because an "'expert opinion is worth no more than the reasons upon which it rests.'" (*Ibid.*; see *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 777 ["'proof of causation cannot be based on . . . an

13

expert's opinion based on inferences, speculation and conjecture'"].)

To the extent Van Herle states subsequent changes in the alarm's design and warning indicate "there is a possibility" that the warning has been problematic, Van Herle is expressly speculating. While he points out that the subject alarm and the one made seven years later are different, he does not provide evidence to show why the changes were made. He does not show the changes were in fact made in response to problems or that the later warning is actually more effective.[5] His speculation and conjecture are insufficient to create a triable issue of material fact. (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161.)

Lastly, Nazari and Mosessian contend that the warning is not consistent with American National Standards Institute (ANSI) standard Z535.4-2011. But the ANSI standards provide they are "completely voluntary" and do not "preclude anyone . . . from manufacturing, marketing, purchasing, or using products, processes, or procedures not conforming to the standards." There is no showing that by not following ANSI's standards, Kidde breached the applicable standard of care.

Nazari and Mosessian, therefore, do not create a triable issue of fact concerning whether the warning was a substantial factor in causing Minassi's injuries. (*Huitt*, *supra*, 188 Cal.App.4th at p. 1604 [failing to issue a warning is "not a substantial factor in bringing about plaintiffs' harm, unless

---

[5] The later warning deleted the following language found on the subject alarm: "DO NOT DEACTIVATE THE ALARM UNTIL THE END OF ALARM LIFE SIGNAL IS HEARD. . . . ONCE THE ALARM IS DEACTIVATED, IT WILL NO LONGER FUNCTION, CANNOT BE REACTIVATED, AND MUST BE REPLACED."

14

plaintiffs would have learned of the warning and altered their conduct because of the warning"].)

## DISPOSITION

The judgment is affirmed.  Kidde is awarded costs on appeal.


MORI, J.

We concur:


CURREY, P. J.


ZUKIN, J.

15